# ANDREW WESBROOK *versus* SETH TAFT, HENRY SANDARS, AND WILLIAM BROWN

November 21, 1825

George A. O'Keeffe, Charles Larned, and William Woodbridge, attorneys for plaintiff.
Andrew G. Whitney and B. F. H. Witherell, attorneys for defendants.

[OPINION]

West Brook vs Sanders & others— Trespass.—

On the trial a verdict was found for the def$^{ts}$, who have interposed a m° for a N. Trial, on the grounds of an alledged misdirection of the Court upon matters of Law, in their charge to the Jury—

A statement of facts on which the present action is founded, and which appeared in evidence on the Trial—

Ap$^l$ 26. 1823. John K. Smith a Justice of the peace for S$^t$ Clair County entered a Judgment ag$^t$ Westrook, the Pltff in this action in favor of Sanders one of the Defendants—

[April] 26. The same day Westrook by his Att$^y$ OKeefe gave notice to the Justice, that he would remove the proceedings by Certiorari into the Supreme Court. Whether the notice was given verbally or in writing, does not appear by the justices Record—

[April] 28. On this day the Def$^t$ gave Bail to the to Sanders, plff in that action, conditioned to abide the Judgment of the S. C. that might be made under a Certiorari intended to be applied for and in case it should be allowed—

May 5. On this day and preparatory to suing out an execution, the Pltff Sanders, entered Security with the Magistrate, conditioned to repay the money that should be made on an execution, if the Judgment should be remanded and reversed by the said S. C.

May 5. The justice issued execution and delivered it to Taft a Constable, and One of the Def$^s$ in the present action— Who proceded and Levied on One Bureau, one yoke of Oxen, Two chairs & one plough— and advertised the same for sale on the 13th of May— That he delivered the property levied on to Thibault and another and took their receipt— That the property from the time of the Levy until the day of sale remained upon the premises of Westrook and in his keeping—

May 8th On this day a certiorari was allowed and issued from the S. C. On which the record and proceedings before the magistrate were brought up—

[May] 13. On this day the certiorari was delivered to the Justice Jn° K. Smith— Who thereupon sent notice to the constable of the fact with direction, not to proceed further under the execution, but to return the same into his office—

[May] 13th After receiving the notice from the Justice the Constable proceeded

under the Execution and sold the plough, one of the Items included in his Levy—
The Balance of the property levied on was not sold, but was put out of the Constable's power, by Wesbrook, by the consent of Thilbaut, the same being either Locked up or secreted— Westbrook forbid the sale of the plow, under a belief as he expressed himself, that the execution was revoked and rendered null and void, by operation of the certiorari & the act of the justice— Thibault expressed like sentiments and which he alledged as his cause for not delivering the Constable the prop$^y$ he held under the receipt—

The Constable Tafts, finding that he Could not avail himself of the property levied on to satisfy his execution, and that the same was wrongfully and forcably withheld, by a fraudulent collusion, between Westbrook and Thibault who had receipted for it, he proceeded to make a further Levy under the execution, and took a flock of sheep belonging to Westbrook and whilst in the act of Driving the sheep, they made their escape into M$^r$ Wesbrooks yard who immediately blocked up the Gate with a rail and forbid Tafts to enter, That W. expressly declared to Tafts that he should not take the sheep, that the Constable was Robbing him under the Colour of Law, with remarks of a similar nature— That at the time there were in and about the house and yard several persons, including in the number Two of M$^r$ Westbrooks sons—

The Constable, deeming the Conduct of Westbrook to be an illegal & forciable oposition, to his authority in the legal execution of his duties as a Constable, departed, and the next morning summoned a posse comitatus, to over come the force interposed and to aid him in the discharge of his official duties— And accordingly aided by such posse, he proceeded to Westbrooks, and retook the sheep and also took one Cow and calf upon s$^d$ Execution, and advertised and sold the same under the execution, and returned the same satisfied and that he had paid Sanders who was Pltff the Judg$^t$— M$^r$ Brown One of the Defendants was of the Posse Comitatus, and was summoned by the Constable—

On the evening of the 12th of May young Westbrook in Company of One Spears, called on Sanders, and as agent for his father proposed to Sanders to settle all differences, and at the same time notified Sanders of the writ of Certiorari— Sanders refused to settle &$^c$

There was no evidence, to shew that Sanders was present at M$^r$ Westbrooks, on the 13th & 14th of May, or that he ever gave any directions to the Constable, to influence him in the Mode or Manner of executing the process— Nor was there any evidence, shewing that Sanders directed the execution to issue— It was in evidence that he was present at Browns when the sheep & Cow were sold, and that he rec$^d$ the am$^t$ of the Judgment—

On the trial the Court charged the Jury on the following points made in the Case Towit.

1st That the execution was to the Constable a sufficient authority, altho the Magistrate might have erred in issuing it—

2$^d$ That the magistrate had not authority to supersede his own execution, when Once in the hands of the Constable, and on which a levy had been made—

3$^d$ That the first levy and sale stood well so far as the Constable acted in good faith & without needless opression—

4th That a Constable had authority, to call out the Posse to his aid, in the execution of a Judicial writ, where a sheriff by Law would be justified—

5th That if the jury were satisfied, upon a full Consideration of the evidence, that there was a fraudulent collusion, to defeat the first levy, between Westbrook

and the persons who receipted for the Property levied on, and thereby charge Tafts the Constable with the debt, and the facts were suff$^t$ for them to infer a rescue of the prop$^y$ by Wesbrook the second levy would stand well and the officer be justified— And that Wesbrook ought not to be benefitted by his own wrong—

6th That in order to charge Sanders in an action of Trespass, under the irregular proceedings of the Constable in making the Levy, it ought to be shewn that he was present, or that he directed the Constable, in the Course he pursued— That the receipt of the judgm$^t$ from the officer, was not of itself evidence to charge him with a Trespass.

7th That as Brown was called on by the officer to aid him in the execution of his process, he was protected, provided he acted fairly in giving the aid required— That if he acted inconsistently with the line of his duty he made himself liable to the action— And further, the jury were informed and instructed by the Court, that if they find that the defendants or any one of them, had acted opressively and corruptly, under Color of the Magistrates process, and that the Pltff had suffered damages by such opressive proceedings, he was entitled to indemnity, and ought to receive it by their verdict

The above I believe to have been the Charge which was delivered by me to the Jury, and acquiesced in by Judge Witherell— I gave it under a belief that the law was so settled— I had some doubts, as to the correctness of my views at the trial so far as related to what is termed the second levy by the Constable,— On the other points I was then satisfied, and I still think the law was correctly stated to the jury, as applied to the facts of the Case—

The law as stated in the charge to the jury, so far as it concerns the second levy, has been strongly contested by the Counsel of M$^r$ Wesbrook— A great number of adjudged cases have been cited, in support of the position, that the Def$^t$ in an execution shall not be subjected to a second levy on the same execution, when the first levy was an effectual one, and to the extent to satisfy the Judgment. Altho, the property should be lost, wasted or misapplied, by the officer or those to whom he should intrust the same, for safe keeping, under a receipt. The current of authority fully support the doctrine Contended for, to the extent of protecting the rights of the Defendant— Further than this I believe they do not go, in any of the adjudged Cases— Is the present Case within the acknowledged law as laid down? or is it within the reasons of the Law? It Cannot be contended that what is termed a second levy, if supported will charge M$^r$ Westbrook the def$^t$, twice with the Judg$^t$ It is very evident that the second levy, resulted from the act of M$^r$ Wesbrook himself— The first was rendered wholly ineffectual and inoperative, by the fraud and collusion of the Pltffs own Act. The officer therefore treated that levy as a short and insufficient levy and proceeded to make a further levy to satisfy the execution— By this Course M$^r$ Westbrook was not in fact, charged twice with the debt— The Course pursued was forced on the Constable by the Course of proceedings Contrived by Westbrook, and as M$^r$ Wesbrooks Conduct was incorrect, in that he resisted the execution of Legal process, and thereby endangered the officer, the Court did permit the Case to go to the jury upon the evidence, with an instruction that the Law was not so positively settled, as to prevent the finding a verdict for the officer, if on a full view of the evidence they should be satisfied, that he was driven to the Course he pursued by the fraudulent Conduct of M$^r$ Westbrook— I was then and am still satisfied with the equity of the verdict— The Case presented striking features, peculiar to itself, and which are not found in any of the adjudged Cases, & I think may be considered as not embraced in the general law—

The action in its nature seeks vindictive damages— and as the def$^t$ has gained a verdict I think the Court ought not to disturb it, and thereby continue a litigation, which has already interrupted the peace and harmony of the society in the neighborhood of the parties— There is another reason, which has some weight with me, which is the effect that a New trial to one of the def$^{ts}$ might have upon the verdict found for the other Two— On the whole I am of opinion that no new trial ought to be granted—